IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN L. FEINGOLD | : | CIVIL ACTION |
| | : | NO. 12-1250 |
| v. | : | |
| | : | |
| UNITRIN DIRECT, et al. | : | |

O'NEILL, J.                                                          September 6, 2012

## MEMORANDUM

Plaintiff Allen L. Feingold, proceeding pro se, is a disbarred former attorney.[1]  Now before me are motions to dismiss Feingold's Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed on behalf of defendants Andrew P. Moore and Moore and Reimenchneider, LLC, defendants Unitin Direct and Kemper Auto & Home Insurance Company and defendant John Blumenthal.  For the reasons that follow, I will grant defendants' motions.

## BACKGROUND

In this action Feingold asserts claims arising out of his alleged representation of defendants Cindy Brenner, Devon Brenner and Robert Moraux[2] in matters related to "their financial and business problems" and in Brenner v. Giuranna, No. 682 (Phila. Cty. Ct. Comm. Pl.

---

[1]      Absent from Feingold's complaint is any mention of his disciplinary history. Feingold was suspended from the Bar of the Commonwealth of Pennsylvania for three years on March 6, 2006.  Office of Disciplinary Counsel v. Feingold, 896 A.2d 1161 (Pa. 2006); Dkt. No. 23 at ECF p. 45.  On March 22, 2006, Feingold was suspended from the Pennsylvania Bar for an additional two years, to run consecutive to the suspension imposed on March 3, 2006.  Id. Feingold was disbarred from the Bar of the Commonwealth of Pennsylvania on August 22, 2008. Id. at ECF p. 47.

[2]      Plaintiff has not filed proof of service of the summons and complaint upon the Brenners or Moreau.  Fed. R. Civ. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court.").

June Term 2005)[3], a personal injury case arising from a motor vehicle accident[4] involving the

Brenners.  Dkt. No. 22 at ¶ 20-22.  Moraux was not a party to the motor vehicle litigation.

Feingold alleges that

> [i]t was agreed by and between the Brenner and Moraux
> defendants that at the time of the closing of the motor vehicle
> matter that Plaintiff, Allen L. Feingold would be compensated for
> the work that he, his associates and employees performed including
> for their extensive work, costs and investment of time and money
> put forth for the Brenner and Moraux defendants . . . .

Id. at ¶ 23.

Feingold claims that he ceased to represent the Brenners and Moraux while "the motor

vehicle collision matter was still pending . . . ."  Id. at ¶ 25.  In explaining why he ceased to

represent the Brenners and Moraux, Feingold does not reference his suspensions or disbarment,

instead he claims that "because of a change in family circumstances . . . the Brenner and Moraux

defendants wished to change representation . . . ."  Id. at ¶ 24.  He asserts that he "was related to

Defendant, Cindy Brenner's Husband and after several incidents occurred, Mr. Brenner and his

wife, Defendant Cindy Brenner became estranged and the Defendant, Cindy Brenner felt that she

could no longer have Plaintiff, Feingold, represent her or her daughter in the motor vehicle case."

Id. ¶ 34.

In fact, Feingold never entered an appearance on behalf of the Brenners or Moraux in the

---

[3]      Feingold's second amended complaint does not specifically identify the
underlying motor vehicle accident case.  The Court may, however, take judicial notice of public
records including state court filings without converting the defendants' motions into motions for
summary judgment.  See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009); Pearson
v. Tanner,--- F. Supp. 2d ----, No. 12-798, 2012 WL 1432282, at *2 (E.D. Pa. Apr. 25, 2012).

[4]      Feingold alleges that Unitrin and Kemper insured the Brenners at the time of the
collision.  Dkt. No. 22 at ¶ 16.

matter of <u>Brenner v. Giuranna</u>.  Instead, his wife, Dora R. Garcia,[5] entered an appearance on their

behalf in the Philadelphia County Court of Common Pleas.  Dkt. No. 23 at ECF ¶. 32-33.  On

April 13, 2006, just over one month after Feingold was first suspended from the practice of law,

the case was transferred to the Court of Common Pleas for Bucks County.  See <u>Id.</u> at ECF p. 36;

<u>Brenner v. Giuranna</u>, No. 2007-06103 (Bucks Cty. Ct. Comm. Pl.).  It does not appear that

Feingold ever entered an appearance on behalf of the Brenners in the action while it was pending

in Bucks County.  Dkt. No. 23 at ECF p. 38.  The docket entries for the matter in Bucks County

show no activity after the case was transferred until July 25, 2007.  <u>Id.</u>  A praecipe to substitute

the appearance of defendant John Blumenthal, Esq. on behalf of the Brenners was filed on

September 25, 2007.  <u>Id.</u>

Feingold claims that after he ceased to represent the Brenners and Moraux, Cindy

Brenner

> stated unequivocally that all of her, her daughter's and her father's
> obligations to Plaintiff Feingold, his associates and employees
> would be paid in full from any settlement, award or verdict in the
> motor vehicle case and that all out of pocket costs and expenses
> would be paid by their new lawyer before the transfer of their file.

Dkt. No. 22 at ¶ 36a.  Feingold contends that he "forwarded all relevant portions of the file to

Defendant, Blumenthal, who used then [sic] to substantially assist in proceeding with this matter

and bringing same to a positive conclusion."  <u>Id.</u> at ¶ 37.  The case settled on or about March 17,

2010, over four years after Feingold's suspension and disbarment.  Dkt. No. 23 at ECF p. 42.

---

[5]      Garcia was suspended on consent from the Pennsylvania Bar for fifteen months
on October 15, 2007.  She was ordered to adhere to conditions for a period of four years
thereafter including that she "not facilitate or assist Allen L. Feingold in the unauthorized
practice of law."  <u>Office of Disciplinary Counsel v. Garcia</u>, No. 182 DB 2006 (Pa. Oct. 25,
2007).

Feingold was not listed as a payee on the check issued in connection with the settlement.  Dkt.

No. 24 at ECF p. 6; <u>see also</u> Dkt. No. 22 at ¶ 29 ("none of the defendants even had the courtesy

to notify the plaintiff regarding the settlement of the motor vehicle case, which they had

promised, for only by a stroke of luck did the plaintiff become aware of same").  Feingold asserts

he "brought to a successful conclusion the property damage claims from this collision" and that

Blumenthal "st[ole] his expenses and costs" and withheld "all fees justly owed to" Feingold.

Dkt. No. 22 at ¶¶ 40, 49.

       Defendants Andrew Moore and Moore & Reimenchneider represented Claire Giuranna as

a defendant in the automobile collision matter.  Plaintiff contends that he contacted Moore and an

"agreement/promise was entered into between them to protect all of [Feingold's] Fees, Expenses

and Costs."  <u>Id.</u>¶ 40.  He further alleges that he wrote to Moore on December 11, 2007,

"confirming [Feingold's] liens for fees, expenses and costs by placing Feingold's name and that

of his associate on an[y] monies meant for the Brenners."  <u>Id.</u> ¶ 41.  Feingold asserts that on more

than one occasion thereafter, "Moore confirmed his agreement and promises to" Feingold.  <u>Id.</u>

¶ 44.  Feingold asserts that when he learned that the automobile collision matter had concluded,

"he contacted Defendant Moore . . . and he was informed that [ ] Blumenthal directed him not to

include either [ ] Feingold or Dora Garcia's name on the check and that the insurance companies

on the case, Defendants[ ] Unitrin Direct and/or Kemper Auto and Home Insurance Company

had also directed him not to do so."  <u>Id.</u> ¶ 45.

## STANDARD OF REVIEW

       Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss all or

part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662, (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:  "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d

-5-

224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that

the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

Ordinarily, pleadings that are pro se must be held to "less stringent standards than formal

pleadings drafted by lawyers."  Dickerson v. Brooks, No. 06-289, 2007 WL 4689001, at *2

(W.D. Pa. Oct. 31, 2007), citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  However,

"[p]ro se attorneys – or in Plaintiff's case, a pro se disbarred attorney – typically cannot claim the

special consideration which the courts customarily grant to pro se parties."  Allegrino v. Conway

E & S, Inc., No. 09-1507, 2010 WL 2035658, at *2 (W.D. Pa. May 18, 2010) (internal quotations

omitted); see also Heller v. Emanuel, No. 07-1393, 2007 WL 1491081, at *2 (E.D.N.Y. May 21,

2007) (finding that although disbarred attorney was proceeding pro se, the court was not

obligated to read his pleadings liberally because he was an experienced attorney).[6]

## DISCUSSION

Feingold's Second Amended Complaint asserts claims against the defendants for fraud

(Counts I and II), negligent misrepresentation (Counts III and IV), breach of contract (Counts V

and VI), conversion and unjust enrichment (Count VII) and civil conspiracy (Count VIII).[7]  The

---

[6]    The Court notes that this is not the first time Feingold has filed an action such as
this.  The Superior Court of Pennsylvania has remarked that Feingold has a filed a number of
similar actions and that "none of his complaints have survived preliminary objections to their
legal insufficiency."  Feingold v. Hendzrak, 15 A.3d 937, 943 (Pa. Super. Ct. 2011) (citing
cases).  Also, in Feingold v. Graff, 12-1090, 2012 WL 2400998, at *1 n.1 (E.D. Pa. June 26,
2012), citing a list of matters, the Court noted that Feingold "has filed several lawsuits in the
Eastern District of Pennsylvania that are strikingly similar to this one."

[7]    In his response to the instant motions to dismiss, Feingold asserts that "[n]o
challenge has been offered to the emotional distress claims so this cause of action must
necessarily be deemed to survive the Defendants' current motion salvo."  Dkt. No. 26 at ECF

Court finds that even after having had leave to amend Feingold does not state any plausible claim

against the moving defendants in his second amended complaint.

I.      **Fraud (Counts I and II)**

In order to assert a claim for fraud under Pennsylvania law, Feingold must allege

> (1) a representation; (2) which is material to the transaction at
> hand; (3) made falsely, with knowledge of its falsity or
> recklessness as to whether it is true or false; (4) with the intent of
> misleading another into relying on it; (5) justifiable reliance on the
> misrepresentation; and (6) the resulting injury was proximately
> caused by the reliance.

Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). Rule 9(b) of the Federal Rules of Civil Procedure

requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind

of a person may be averred generally." Fed. R. Civ. P. 9(b). "The purpose of Rule 9(b) is to

'provide defendants with notice of the precise misconduct that is alleged and to protect

defendants' reputations by safeguarding them against spurious allegations of immoral and

fraudulent behavior.'" U.S. Dept. of Transp. ex rel. Arnold v. CMC Eng'g, 745 F. Supp. 2d 637,

641 (W.D. Pa. 2010), quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d

Cir. 1997). "To comply with the requirements of Rule 9(b), a complaint must state 'the date,

place or time of the fraud,' or otherwise inject 'precision or some measure of substantiation into

[the] allegations of fraud.'" U.S. ex rel. Thomas v. Siemens AG, 708 F. Supp. 2d 505, 511 (E.D.

Pa. 2010), quoting Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).

---

p. 2. Although the Court's Order of June 14, 2012 gave Feingold leave to amend his claim for
intentional infliction of emotional distress, Feingold's second amended complaint does not
include such a claim. Dkt. No. 22.

Feingold asserts in his response to the motions to dismiss that "whether obligated or not, nevertheless, defendants promised to protect Feingold's liens by including him and his associate as named payees on any settlement check." Dkt. No. 26 at ECF p. 9.  His second amended complaint, however, lacks sufficiently specific factual allegations regarding the defendants' alleged "promises" to withstand the instant motions to dismiss.

With respect to Moore and Moore & Riemenschneider, Feingold alleges that he "wrote to defendant, Moore confirming [Feingold's] liens . . . by placing [Feingold's] name and that of his associate on an[y] monies meant for the Brenners." Dkt. No. 22 at ¶ 41.  He asserts that thereafter, whenever he periodically "saw Moore in person or spoke to him on the phone," "Moore confirmed his agreement and promises to the Plaintiff, Feingold . . . ." Id. ¶¶ 43-44. With respect to Unitrin and Kemper, Feingold only alleges that Unitrin and Kemper told Moore not to include Feingold on the settlement check.  Id. ¶ 45.  Likewise, Feingold alleges that defendant Blumenthal directed Moore not to include Feingold on the settlement check.  Id. Finally, the Brenners and Moraux are alleged to have "said that they would make sure that plaintiff's name would appear on any settlement, award, verdict or closing check . . . ." Dkt. No. 22 at ¶ 26.  Feingold claims that Cindy Brenner "stated unequivocally that all of her, her daughter's and her father's obligations to Plaintiff, Feingold, his associates and employees would be paid in full from any settlement, award or verdict in the motor vehicle case . . . ." Id. ¶ 36

The second amended complaint does not state when or where any of these allegedly fraudulent statements were made.  Further, beyond the alleged statement by Cindy Brenner and the letter that Feingold wrote himself, the second amended complaint does not identify the speaker of any of the allegedly material misrepresentations.  Feingold's allegations are

-8-

unsupported by specific facts and are not sufficient to show a plausible basis for fraud under Rule 9(b).

Even if Feingold's allegations regarding defendants' promises were sufficiently substantiated, he could not amend his complaint to assert a claim for fraud because he cannot allege that he justifiably relied on any of the alleged misrepresentations.  Feingold contends that he had "liens for fees, expenses, and costs . . . on an[y] monies meant for the Brenners."  Dkt. No. 22 at ¶ 41.  He was not, however, entitled to a lien on any verdict or settlement in the motor vehicle matter.  The only remedy available to Feingold to recover payment for legal services he provided to the Brenners on a contingent fee basis[8] is quantum meruit, "a remedy based in payment for services rendered and prevention of unjust enrichment . . . ."  Ragnar Benson, Inc. v. Bethel Mart Assocs., 454 A.2d 599, 603 (Pa. Super. Ct. 1982); see, also, Mager v. Bultena, 797 A.2d 948, 956-58 (Pa. Super. Ct. 2002) (finding that an attorney may recover only in quantum meruit from a former client who was represented on a contingent-fee basis when the contingency accrues after the termination of the attorney-client relationship); Fine v. Checcio, No. 0315, 2008 WL 2214628 (Ct. Comm. Pls. Phila Cty. Apr. 17, 2008) ("Where a client terminates a contingent fee contract with an old law firm and the claim is successful with a new law firm, the old law firm is *only* entitled to quantum meruit remedy of the hourly rate for work performed under the

---

[8]      The second amended complaint alleges that the defendants' alleged promises to Feingold would encompass both any contingency for his representation of the Brenners in the motor vehicle matter and his fees for his representation of Moreaux and the Brenners on their "financial and business problems."  Dkt. No. 22 at ¶ 21, 22 and 26.  To the extent that Moraux or the Brenners owed fees to Feingold for work performed "prior to being disciplined pursuant to a contractually set hourly rate or a contingency fee arrangement in which he ha[d] seen the case through to completion," Feingold would be entitled to pursue such fees.  Pearson, 2012 WL 1432282, at *6 n.6.  He has not alleged, however, that he had an hourly fee agreement with Moraux or the Brenners.

contract, not an equitable charging lean on the verdict itself.")  (emphasis in original) .

Quantum meruit does not provide a basis for recovery as against the moving defendants. If the Brenners terminated Feingold because he was suspended from the practice of law, he could not pursue a quantum meruit claim for compensation for the services that he provided to them. "[A]n attorney is not entitled to compensation from a former client in a contingency-fee case in which he terminated his representation prematurely due to disbarment or suspension from the practice of law. Feingold v. Graff, No. 12-1090, 2012 WL 2400998, at *3 (E.D. Pa. June 26, 2012), citing Pearson v. Tanner, No. 12-798, 2012 WL 1432282, at *6 (E.D. Pa. Apr. 25, 2012). "The attorney's disbarment constitutes a material breach of his contract with the client, and the attorney is not entitled to recovery for services rendered." Id.

Further, even if, as Feingold alleges, the Brenners and Moraux terminated him not because of his suspension but "because of the Brenners' resentment over his efforts in seeking to assist in the preservation of their marital union," he would not be able to recover in quantum meruit under the allegations set forth in the second amended complaint. Dkt. No. 26 at ECF p. 9. To establish a valid claim for quantum meruit, a plaintiff must establish "'benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value.'" Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000), quoting 16 Summ. Pa. Jur. 2d Commercial Law, § 2.2 (1994). Feingold has not alleged how the Moore defendants, who were opposing counsel in the automobile matter, or the insurance companies received any benefit from or were unjustly enriched by Moore's purported promise to put Feingold's "name and that of his associate an[y]

-10-

monies meant for the Brenners."  Dkt. No. 22 at ¶ 41.

Also, Feingold cannot recover in quantum meruit against Blumenthal, who took over representation of the Brenners after Feingold was suspended from the practice of law.  A quantum meruit action does not lie against an unrelated successor attorney under Pennsylvania law and there is no affiliation between Feingold and Blumenthal.  Pearson, 2012 WL 1432282, at *3.

Finally, there is a four-year statute of limitations on quantum meruit claims.  42 Pa. C.S. § 5525(4).  At the latest, any claim that Feingold may have had for recovery in quantum meruit accrued on March 6, 2006, when he was suspended from the practice of law, and expired on March 6, 2010, well before he filed the instant action on March 12, 2012.

Feingold's claims for fraud will be dismissed as against the moving defendants.

## II.    Negligent Misrepresentation (Counts III and IV)

To state a claim for negligent misrepresentation under Pennsylvania law, Feingold must allege:  "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270, 277 (Pa. 2005), quoting Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).

The Court finds that Feingold's amended claims for negligent misrepresentation must fail because, as is set forth above, Feingold cannot allege that he justifiably relied on the defendants' promises that he would receive compensation out of any settlement of the Brenners' claims for the services he rendered prior to his disbarment.  His claims for negligent misrepresentation will

be dismissed as against the moving defendants.

### III.   Breach of Contract (Counts V and VI)

To the extent that Feingold's Second Amended Complaint includes claims for breach of contract, such claims are beyond the scope of the Court's grant of leave to amend in its June 14, 2012 Order.  That Order permitted Feingold to amend only his claims for fraud, negligent misrepresentation, civil conspiracy and infliction of emotional distress.  Dkt. No. 21.

Further, even if Feingold had leave to amend his complaint to assert his claims for breach of contract, his claims are insufficient as pled.  In order to state a claim for breach of contract under Pennsylvania law, Feingold must allege: (1) the formation of the contract; (2) the terms of the contract; (3) breach of the contract by defendants; and (5) damages.  See CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1057 (Pa. Super. Ct. 1999).  In determining whether these elements are met courts examine whether: (1) both parties manifested an intention to be bound; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was consideration.  ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998).

Feingold's second amended complaint does not allege sufficient facts to support a finding that a contract was formed between Feingold and any of the moving defendants.  There are no allegations in the second amended complaint that Blumenthal, Unitrin or Kemper made any agreement to direct funds from the settlement of the Brenners' claims to Feingold.  As for the Moore defendants, Feingold alleges only that an "agreement/promise was entered into between [Feingold and Moore] to protect all of [Feingold's] Fees, Expenses and Costs."  Dkt. No. 22 at ¶ 40.  Feingold does not allege the terms of this purported agreement and makes no allegation that the Moore defendants received consideration for this purported agreement.

Feingold's claims for breach of contract will be dismissed as against the moving defendants.

## IV.    Conversion and Unjust Enrichment (Count VII)

Feingold's claim for conversion and unjust enrichment against Blumenthal[9] must be dismissed as well.  To maintain a cause of action for conversion, "[t]he party claiming conversion must have had an immediate right of possession of the property at the time it was allegedly converted."  Corporate Plaza Partners, Ltd. v. Am. Employers' Ins. Co., No. 95-5234, 1996 WL 180696, at *1 (E.D. Pa. Apr. 3, 1996).  Feingold does not sufficiently allege that he had a right to possess the settlement funds.

As for unjust enrichment, its elements, parallel to the elements of a claim for quantum meruit "are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  Braun v. Wal–Mart Stores, Inc., 24 A.3d 875, 896 (Pa. Super. Ct. 2011) (internal quotation omitted).  Feingold's second amended complaint alleges that Blumenthal "unfairly and improperly received funds and monies that belonged to the plaintiff for his work and expenses that [Blumenthal was] not justified in receiving in violation of the law, ethics code, disciplinary rules, and [was] unjustly enriched . . . ."  Dkt. No. 22 at ¶ 52.  This allegation is conclusory and insufficient to withstand Blumenthal's motion to dismiss.

---

[9]     As captioned in the second amended complaint, Count VII asserts claims for conversion and unjust enrichment against Moraux, the Brenners and Blumenthal, but does not assert such claims against Unitrin, Kemper or the Moore defendants.

V.      **Civil Conspiracy (Count VIII)**

The Court also dismisses Feingold's civil conspiracy claim.  To state a claim for civil conspiracy, Feingold must allege "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Doltz v. Harris & Assocs., 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003).  Where a plaintiff has not alleged a viable underlying tort claim, any claim for civil conspiracy must be dismissed.  See, e.g., Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 834 (E.D. Pa. 2001) (holding that a plaintiff had failed as a matter of law to allege civil conspiracy because all of his underlying tort claims were either barred by the statute of limitations or substantively insufficient).  "A verdict [in a plaintiff's favor] on civil conspiracy should yield to a finding for the defendant on the underlying tort because the cause of action is wholly subordinate to the underlying tort's existence."  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000).

Feingold's second amended complaint contains no viable allegations of an underlying tort and thus fails as a matter of law to state a claim for civil conspiracy.

An appropriate Order follows.